UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL LATROY HALL,

                    Plaintiff,

v.

STEVE HINKLEY, et al.,

                    Defendants.

_____/

Case No. 1:25-cv-198

Honorable Phillip J. Green

**OPINION**

      This is a civil rights action brought by a former county jail inmate under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA).  The Court will grant Plaintiff leave to proceed *in forma pauperis*.  (ECF No. 2.)

      Under 28 U.S.C. § 1915(e)(2), governing proceedings *in forma pauperis*, the Court is required to dismiss any action if the complaint is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Chambers, Gault, Reed, Walker, Kucko, Shmidt, Boyer, Starbuck-Poole, Saxman, and Obrien.  The Court will also dismiss, for failure to state a claim, Plaintiff's § 1983 claims and

personal capacity ADA claim against remaining Defendant Hinkley. Plaintiff's official capacity ADA claim against Hinkley for failure to provide Plaintiff with a bottom bunk accommodation remains in the case.

## Discussion

### I.      Factual Allegations

Plaintiff's complaint arises out of events that took place during Plaintiff's incarceration in the Calhoun County Correctional Facility, located in Battle Creek, Calhoun County, Michigan.  Plaintiff sues the following Calhoun County personnel: Sheriff Steve Hinkley, Captain Tracy Chambers, Lieutenant Matthew Gault, Sergeant Unknown Reed, Classification Deputy Unknown Walker, and Medical Deputy Unknown Kucko (collectively, "Calhoun County Defendants").  Plaintiff also sues the following medical personnel identified as employees of YesCare: MD Physician Patricia Shmidt, Nurse Unknown Boyer, Nurse Sara Starbuck-Poole, Registered Nurse Unknown Saxman, and Nurse Unknown Obrien (collectively, "YesCare Defendants").  Defendants are sued in their respective official and personal capacities. (Compl., ECF No. 1, PageID.2–4.)

At the time of the events described in his complaint, Plaintiff was a pretrial detainee in the Calhoun County Correctional Facility.[1]  Plaintiff alleges that he was booked into the Calhoun County Correctional Facility on July 17, 2024.  (ECF No. 1,

---

[1] Calhoun County Court Records indicate that Plaintiff was arraigned on July 18, 2024, and pleaded guilty on September 5, 2024. *See* MiCourt Case Search, https://micourt.courts.michigan.gov/case-search/court/C37/case-details?caseId=2024-000002157-FH&tenantKey=C37-13-0620755-00-00&searchUrl=%2Fcourt%2FC37%2Fsearch%3FlastName%3DHall%26firstName%3DMichael%26middleName%3DLaTroy%26page%3D1, (last visited Apr. 30, 2025).

PageID.6.)  The following day he was arraigned and taken to "medical" by Defendant Kucko.  (*Id.*)  While in medical, Plaintiff was issued a citation for disobeying staff orders and was ordered to spend 30 days in administrative segregation.  (ECF No. 1-1, PageID.14.)  On July 19, 2024, Plaintiff requested a hearing and an appeal on the disciplinary charge and filed a grievance against Defendant Kucko for abuse of his power and racial discrimination.  (ECF No. 1, PageID.6; ECF No. 1-1, PageID.13.)  The disciplinary decision was upheld by "the committee" in a memorandum signed by Defendant Reed; however, Defendant Reed reduced the time Plaintiff was ordered to spend in segregation from 30 days to 10 days.  (ECF No. 1, PageID.6; ECF No. 1-1, PageID.13, 17.)

On July 22, 2024, Plaintiff again appealed the disciplinary decision to Defendant Reed, mentioning that he intended to file a civil rights and ADA complaint against Defendants Reed, Kucko, and Hinkley.[2]  (ECF No. 1, PageID.6; ECF No. 1-1, PageID.15.)  Plaintiff then requested a copy of the Bill or Rights and was told to write to the Michigan Law Library.  (ECF No. 1, PageID.6; ECF No. 1-1, PageID.16.)

On July 26, 2024, Defendant Gault denied Plaintiff's grievance against Defendant Kucko. (ECF No. 1, PageID.6; ECF No. 1-1, PageID.17.)

On July 30, 2024, Defendant Walker took Plaintiff from the classification pod to D-pod.  (ECF No. 1, PageID.7.)  Plaintiff was assigned a top bunk.  (*Id.*)  That day, Plaintiff submitted a kite via the jail's kiosk system for mental health services for

---

[2] Plaintiff appears to include two spellings of this Defendant's name: Hinkley and Heinke. The Court will use the spelling of Hinkley as it appears in the list of parties.

excessive high blood pressure and anxiety.  (*Id.*)  On August 2, 2024, Plaintiff also submitted a kite regarding "bottom bunk detail" because Plaintiff had been in a car accident.  (*Id.*)  The next day, Plaintiff received his "bottom bunk detail paperwork" from non-party Deputy Edwards and was moved from the top to the bottom bunk. (*Id.*)  The paperwork indicated that Defendant Saxman completed an order that Plaintiff receive a bottom bunk on July 17, 2024; however, the Medical Special Accommodation was signed on August 3, 2024, the same day that Plaintiff was moved to the bottom bunk.  (*Id.*)

On August 5, 2024, Plaintiff submitted a kite to "mental health" regarding mental health court.  (*Id.*)

On August 13, 2024, Plaintiff received a "1983 (Civil Rights Complaint)" from the Court.  (*Id.*, PageID.8.)  That night, Plaintiff's cell was inspected after headcount was clear.  (*Id.*)

Plaintiff brings claims for violation of his First, Eighth, and Fourteenth Amendment rights, as well as his rights under the ADA.  (*Id.*, PageID.9.)  As a result of the events described in Plaintiff's complaint, Plaintiff seeks monetary relief of $10 million.  (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

A.    **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

### 1.    Official Capacity Claims

Plaintiff names Defendants in their official, as well as personal, capacities. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Therefore, an official-capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Thus, Plaintiff's claims against the Calhoun County Defendants in their official capacities are, in reality, claims against Calhoun County. And claims against the YesCare Defendants are treated as claims against YesCare itself.[3]

The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, has been extended to private corporations). Therefore, Calhoun County and YesCare may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of*

---

[3] Plaintiff indicates that the YesCare Defendants perform medical care within the Calhoun County Correctional Facility. A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54).

*Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694.  Instead, an entity can be held liable under § 1983 only when its official policy or custom causes the injury.  *Connick*, 563 U.S. at 60.  This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom.  *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department.  *See Monell*, 436 U.S. at 690.  Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law."  *Id.*

Here, Plaintiff fails to allege any facts that support an inference that the individual Defendants acted pursuant to any policy or custom adopted by their respective entities, YesCare or Calhoun County.  Thus, the Court will dismiss Plaintiff's § 1983 official capacity claims against all Defendants for failure to state a claim on which relief may be granted.  *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of custom or policy was conclusory, and plaintiff failed to state facts supporting the allegation).

### 2. Claims Against Defendants Hinkley, Chambers, Shmidt, and Obrien

Plaintiff names Defendants Hinkley, Chambers, Shmidt, and Obrien in his list of parties; however, he fails to even mention them in the body of his complaint, let alone allege facts that would plausibly suggest that they personally took any action against him.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Here, Plaintiff's claims against Defendants Hadden and Macauley fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal for that reason alone. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

To the extent that Plaintiff seeks to impose liability on one or more of these Defendants because of their supervisory responsibilities, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts that would plausibly suggest that Defendants Hinkley, Chambers, Shmidt, and Obrien authorized, approved, or knowingly acquiesced in any unconstitutional conduct. Therefore, for each of the foregoing reasons, Plaintiff fails to state a claim against Defendants Hinkley, Chambers, Shmidt, and Obrien.

### 3.    Claims Against Defendant Gault

Plaintiff's only allegation against Defendant Gault is that Defendant Gault denied Plaintiff's grievance against Defendant Kucko. (ECF No. 1, PageID.6; ECF No. 1-1, PageID.17.) As set forth above, however, simply responding to a prisoner's grievance is insufficient to establish liability under § 1983. *See Shehee,* 199 F.3d at 300; *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (affirming the dismissal of the plaintiff's claims on screening where the only allegations against the dismissed defendants concerned the denial of one of the plaintiff's administrative grievances). Therefore, the Court will dismiss Plaintiff's complaint against Defendant Gault.

### 4.    First Amendment Retaliation Claims

Plaintiff indicates that he brings claims for violation of his First Amendment rights.  (ECF No. 1, PageID.9.)  Plaintiff alleges that, on the day that he received a "1983 (Civil Rights Complaint)" from this Court, Plaintiff's cell was inspected after headcount.  (*Id.*, PageID.8.)  Plaintiff then asks the Court, "Is this a true coincidence, or some form of retaliation by Calhoun County Correctional Facility Staff?"  (*Id.*)  Based on the facts alleged by Plaintiff, the Court will answer that there is nothing to plausibly suggest that this was "some form of retaliation."

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to submit "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).  However, Plaintiff only vaguely states that he received a "1983 (Civil Rights Complaint)" from this Court.  The Court cannot discern whether

Plaintiff had filed a complaint or whether he simply received a form. Therefore, Plaintiff fails to satisfy even the first element of a retaliation claim. Yet, even if the Court assumes that Plaintiff engaged in protected conduct, Plaintiff nonetheless fails to satisfy the remaining elements.

Plaintiff alleges that, on one occasion, his "cell was inspected after headcount was clear." (ECF No. 1, PageID.8.) However, Plaintiff fails to attribute this action to any individual Defendant. Moreover, the Sixth Circuit has held that "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003); *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011) ("the single search of a prison cubicle would not deter a person of ordinary firmness from pursuing constitutional grievances."). Therefore, Plaintiff's claim also fails as to the second element of a retaliation claim.

Finally, Plaintiff provides this Court with nothing more than speculation as to causation. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987));

*see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) (holding that, without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Nothing within Plaintiff's complaint plausibly suggests that the search of Plaintiff's cell was motivated by any protected activity.  Plaintiff instead appears to ask this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.  It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that the individual Defendants took an adverse action against Plaintiff for retaliatory reasons.  *See Iqbal*, 556 U.S. at 679.  Plaintiff's allegations do not come close to meeting this minimal initial burden.  Therefore, the Court will dismiss Plaintiff's retaliation claims.

### 5. Eighth Amendment Claims

Plaintiff states that he intends to bring claims for violation of his Eighth Amendment rights.  (ECF No. 1, PageID.9.)  "But the Eighth Amendment applies only to prisoners who have been sentenced for a crime, whereas the Fourteenth Amendment protects pretrial detainees who await their trial." *Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, 130 F.4th 593, 599 (6th Cir. 2025) (citing *See Lawler ex rel. Lawler v. Hardeman County*, 93 F.4th 919, 926 (6th Cir. 2024)).  Because the complaint concerns events that took place while Plaintiff was a pretrial detainee, the Court will dismiss Plaintiff's Eighth Amendment claims and will address Plaintiff's allegations under the Fourteenth Amendment.

### 6.    Fourteenth Amendment Medical Care Claims

Plaintiff's complaint references the following potential medical issues: (1) mental health concerns, including high blood pressure and anxiety; (2) a need for a bottom bunk detail; and (3) unidentified issues concerning mental health court.  The Court will liberally construe Plaintiff's allegations concerning these issues as Fourteenth Amendment claims for inadequate medical care.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains."  *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)).  Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'"  *Id.* (citations omitted).

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'"  *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)).  Then, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment.  *Id.* at 392–93.  *Kingsley* left unanswered the question of "whether an objective standard

14

applies in other Fourteenth Amendment pretrial detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit "modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness." *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 597 (quoting *Castro v. City of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer*, 511 U.S. at 834. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's

need[] for medical care is obvious even to a lay person."  *Blackmore*, 390 F.3d at 899; *see also Phillips*, 534 F.3d at 539–40.

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

### a.    Issues Concerning High Blood Pressure and Anxiety and Mental Health Court

Plaintiff alleges that he sent a kite to mental health regarding his high blood pressure and anxiety.  Plaintiff provides the Court with no further information

regarding his mental health needs or the extent of his symptoms.  Plaintiff also states that he sent a kite concerning some unidentified issue regarding mental health court.

As to the objective prong of the deliberate indifference test, Plaintiff provides the Court with no information regarding any medical need pertaining to Plaintiff's mental health court request.  Plaintiff complaint also does not contain any facts from which this Court could infer that Plaintiff's high blood pressure and anxiety were serious medical needs within the meaning of the Fourteenth Amendment.  Plaintiff's complaint does not indicate his blood pressure levels, how long Plaintiff's blood pressure was elevated, or the ill effects, if any, that Plaintiff's elevated blood pressure would have if left untreated.  *See Harris v. Cnty. of Shiawassee*, No. 11-cv-10318, 2012 WL 2526929 (E.D. Mich. June 28, 2012) ("[h]igh blood pressure is not a condition where the need for medical care is readily discernable to a layman.").  And, while severe mental anxiety or an anxiety disorder *could* amount to a serious medical need, Plaintiff's reference to "anxiety" alone, without more, does not plausibly suggest a medical need posing a substantial risk of serious harm.

Nonetheless, even if Plaintiff had satisfied the objective component of the deliberate indifference test, Plaintiff's complaint is devoid of facts that would suggest that any named Defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596.

Plaintiff does not provide the Court with any further information regarding his mental health court request, including any need for medical care. Plaintiff also does not indicate that any named Defendant received this request, and he does not describe the actions (or lack thereof) taken in response.

As to Plaintiff's kite regarding excessive high blood pressure and anxiety, Plaintiff states only that Defendant Starbuck-Poole responded. (ECF No. 1, PageID.7.) Plaintiff's complaint contains no facts whatsoever regarding the information that he provided to Defendant Starbuck-Poole or Defendant Starbuck-Poole's response.

Plaintiff's claim against Defendant Starbuck-Pool and any claim related to Plaintiffs' kites to mental health rest upon nothing more than conclusory allegations of potential Fourteenth Amendment violations. (*See* ECF No. 1, PageID.9.) Plaintiff has not pleaded enough factual content to permit the Court to draw a reasonable inference of a constitutional violation. *See Iqbal*, 556 U.S. at 679. Therefore, the Court will dismiss Plaintiff's Fourteenth Amendment claim.

### b.    Bottom Bunk Detail

Plaintiff alleges that he was in a car accident on March 10, 2024, and that climbing onto the top bunk caused Plaintiff extreme pain in his left shoulder, back, and right ankle. (ECF No, 1, PageID.7.) He alleges that his medical condition was sufficient to warrant a medical professional to conclude that he should be ordered a bottom bunk. (ECF No. 1, PageID.7; ECF No. 1-1, PageID.18.) Taking these allegations as true, the Court will assume that Plaintiff's need for bottom bunk detail stemmed from an objectively serious medical condition. However, Plaintiff has again

failed to provide the Court with sufficient facts, taken as true, that would satisfy the revised subjective component under *Brawner*.

Plaintiff alleges that Defendant Walker originally assigned Plaintiff to a D-unit top bunk despite a note on Plaintiff's Medical Special Accommodation form indicating, "order wrote on 7/17/24 by RN Saxman."  Plaintiff does not make any factual allegations against Defendant Saxman in the body of his complaint, but the records attached to Plaintiff's complaint indicate that Defendant Saxman wrote the medical order that Plaintiff be housed on the main floor and assigned a bottom bunk. (ECF No. 1-1, PageID.18.)  Finally, Plaintiff states that Defendant Boyer received Plaintiff's August 2, 2024, kite regarding Plaintiff's request for a bottom bunk, but does not provide the Court with any facts concerning Defendant Boyer's response. (*Id.*, PageID.7.)  Plaintiff's complaint indicates that Plaintiff received his bottom bunk detail paperwork the following morning at 6:00 a.m.  (*Id.*)

First, the Court cannot discern any basis for Plaintiff's claim against Defendant Saxman where Defendant Saxman ordered Plaintiff the very medical accommodation that he sought Perhaps Plaintiff attempts to fault Defendant Saxman for Plaintiff not immediately receiving the accommodation; however, there are no facts whatsoever from which the Court can draw that inference.  Second, there are no facts to suggest that Defendant Walker, in assigning Plaintiff to a D-unit top bunk, was aware of Plaintiff's medical condition or Defendant Saxman's order for a medical accommodation, or that Defendant Walker acted intentionally with something akin to recklessness.  And third, while Plaintiff does not provide the Court with any

information regarding the content of Plaintiff's August 2, 2024, kite, or when Defendant Boyer may have received it, Plaintiff's complaint makes clear that Plaintiff's request was satisfied at 6:00 a.m. the very next day.

In all, even liberally construing Plaintiff's complaint and giving Plaintiff the benefit of all reasonable inferences, Plaintiff's complaint fails to satisfy the second prong of the deliberate indifference test.  At best, Plaintiff's complaint implies only that *someone* may have been negligent in seeing that Defendant Saxman's order was distributed, and that Plaintiff was provided with the medical accommodation for a bottom bunk.  However, in refashioning the Fourteenth Amendment standard for claims of inadequate medical care, the Sixth Circuit promised in *Brawner* that "[m]ere negligence" would never suffice.  *Brawner*, 14 F.4th at 585, 596.  Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment claims for inadequate medical care because he has failed to state a claim on which relief may be granted.

### 7.    Fourteenth Amendment Equal Protection Claims

Plaintiff mentions, in passing, that he is seeking monetary compensation for "racial discrimination."  (ECF No. 1, PageID.9.)  Plaintiff's complaint does not otherwise mention discrimination in any form.  Nonetheless, out of an abundance of caution, the Court will address Plaintiff's complaint as including an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473

20

U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"  *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to state an equal protection claim premised upon racial discrimination as he fails to allege facts which would suggest that any named Defendant intentionally treated a similarly situated inmate of a different race more favorably.  Accordingly, any equal protection claim will be dismissed.

### B.    ADA Claims

Plaintiff also contends that Defendants violated Plaintiff's rights under the ADA.  (ECF No. 1, PageID.8.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

First, to address Plaintiff's personal capacity claims and claims against the YesCare Defendants, Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).  The proper defendant in a Title II claim is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). "[N]either the ADA nor the [Rehabilitation Act] impose liability upon individuals." *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004).  Similarly, "a private corporation is not a public entity [for ADA purposes] merely because it contracts with a public entity to provide some service." *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (determining that the healthcare provider and its employees were not public entities under the ADA) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see also Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013) (concluding that a private health

provider that contracted with a state prison was not a "public entity" under the ADA).
Therefore, for that reason alone, the Court will dismiss Plaintiff's ADA claims against
the YesCare Defendants and against the Calhoun County Defendants in their
personal capacities.

Second, considering the merits of Plaintiff's claims against the Calhoun County
Defendants in their official capacities, Plaintiff may proceed under "two different
theories: failure to reasonably accommodate and intentional discrimination." *Finley
v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024).  On a theory of intentional discrimination,
Plaintiff does not provide the Court with facts that would indicate that Plaintiff was
subject to discrimination or otherwise excluded from any benefit because of a
disability.  As the United States Court of Appeals for the Second Circuit has
explained, "[w]here the handicapping condition is related to the condition(s) to be
treated, it will rarely, if ever, be possible to say . . . that a particular decision was
'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984).
Indeed, that distinction explains why the ADA is not an appropriate federal cause of
action to challenge the sufficiency of medical treatment because "[t]he ADA is not
violated by 'a prison's simply failing to attend to the medical needs of its disabled
prisoners.'" *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *see,
e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8,
2000) ("[N]either the RA nor the ADA provide a cause of action for medical
malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir.
Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42

U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'")  Therefore, the Court will dismiss any claims under ADA for intentional discrimination.

> To bring a claim under a failure to accommodate theory,
>
> > a plaintiff must show that the defendant reasonably could have accommodated his disability but refused to do so. *Knox County*, 62 F.4th at 1000. Relatedly, the plaintiff must prove that the failure to accommodate impeded his ability to participate in or benefit from a program or service. *Id.* Because failing to grant a reasonable accommodation is itself direct evidence of discrimination, plaintiffs who meet this burden need not provide additional evidence of discriminatory intent. *See, e.g.*, *Keller v. Chippewa Cnty. Bd. of Comm'rs*, 860 F. App'x 381, 385–86 (6th Cir. 2021); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 908–09 (6th Cir. 2004).

*Finley*, 102 F.4th at 820–21 (footnote omitted).

Plaintiff claims that the Calhoun County Defendants acting in their official capacities failed to accommodate Plaintiff's disability through the provision of a bottom bunk from July 30, 2024, until the morning of August 3, 2024, causing Plaintiff to suffer extreme pain.  (ECF No 1, PageID.7.)  At this stage in the proceedings, the Court will allow Plaintiff to proceed with his ADA claim for failure to accommodate.

However, as discussed above, Plaintiff's claims against Defendants Hinkley, Chambers, Gault, Reed, Walker, and Kucko in their respective official capacities each represent an identical ADA claim against Calhoun County.  *See Graham*, 473 U.S. at

165. Therefore, these claims are redundant of one another. *See Foster v. Michigan*, 573 F. App'x 377, 389 (6th Cir. 2014). The Court will, therefore, allow Plaintiff's official capacity claim under the ADA only against Defendant Hinkley. The Court will dismiss as redundant Plaintiff's official capacity claims under the ADA against Defendants Chambers, Gault, Reed, Walker, and Kucko.

## <u>Conclusion</u>

Having conducted the review required by 28 U.S.C. § 1915(e)(2), the Court determines that Defendants Chambers, Gault, Reed, Walker, Kucko, Shmidt, Boyer, Starbuck-Poole, Saxman, and Obrien will be dismissed for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's § 1983 claims and personal capacity ADA claim against remaining Defendant Hinkley. Plaintiff's official capacity ADA claim against Defendant Hinkley for failure to provide Plaintiff with a bottom bunk accommodation remains in the case.

An order consistent with this opinion will be entered.

Dated:  May 8, 2025              /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge